ORDERED in the Southern District of Florida on ___02-11-11___.



~~signature~~<br>Raymond B. Ray, Judge<br>United States Bankruptcy Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | |
|---|---|
| NORMAN PAUL WEXLER, ) | |
| ) | Case No. 10-36883-RBR |
| Debtor, ) | Chapter 7 |
| ) | |

### ORDER GRANTING MOTION TO TRANSFER VENUE [DE 17] AND TRANSFERING CASE

THIS MATTER came before the Court on the Motion of the Illinois Student Assistance Commission ("ISAC") to Transfer the Venue of this case to the Northern District of Illinois ("Venue Motion") [DE 17] and the Debtor, Norman Wexler's ("Debtor" or "Wexler") Response thereto [DE 25].[1]

In its motion, ISAC asserts that venue is not proper in this district pursuant to 28 U.S.C. § 1408, or alternatively that venue should be transferred in the interest of justice and for the convenience of the parties pursuant to 28 U.S.C. § 1412. The Debtor's Response asserts that venue is proper in the Southern District of Florida because the Debtor has had a Florida residence for a number of years and he, his wife, and her elderly father have lived in Florida at various times since

---

[1] Two joinders were filed to the Venue Motion, one by the City of Chicago [DE 34] and one by HSBC Finance Corporation [DE 29]. However, HSBC Finance Corporation withdrew its joinder [DE 50] prior to the hearing, and the City of Chicago did not participate in the evidentiary hearing on the Venue Motion. The U.S. Trustee and Trustee did not take any position relative to the Venue Motion.

the home was purchased in 1980, and intended to make it their permanent residence in retirement within the requisite period. This Court held an evidentiary hearing on January 6, 2011 where in the Court took evidence and directed the parties to submit competing proposed orders.

This Court, after considering the pleadings of record, the proposed orders, and the testimony and evidence presented at the January 6, 2011 evidentiary hearing, finds and concludes as follows.

## FINDINGS OF FACT

Wexler practiced law as a licensed attorney in the state of Illinois starting in 1968 and has since practiced at various firms in Illinois. (DE 61 at Tr. pp. 8-9) Wexler continues to be licensed as an attorney in Illinois and last renewed his Illinois law license in October or November of 2010. (Tr. p. 39; Ex. 6, p. 31) He has never been licensed or practiced as an attorney in Florida. (Tr. p. 40)

Wexler resided in Illinois during the entire time that he worked as an attorney. (Tr. p. 9) His most recent residence in Illinois was located in a suburb of Chicago where he lived for 14 years until the residence was sold on August 17, 2010 for an amount in excess of $1 million. (*Id.*, p. 39; Ex. 6, p. 30)

Wexler and his wife owned a condominium in Florida which they acquired in 1979. (Ex. 6, p. 19) Wexler's father-in-law has lived full time in the condominium since 1980. (Tr. p. 91) Over the years, Wexler and his wife would travel to Florida and stay at the condominium. (Ex. 6, p. 19)

Wexler filed his Chapter 7 bankruptcy petition on September 8, 2009 (the "Petition Date") in this district. The 180 day venue period under 28 U.S.C. § 1408 (the "Venue Period") therefore runs from March 12, 2010 until the Petition Date.

In both his verified objection and during the evidentiary hearing, Wexler asserted that he and his wife permanently moved to Florida in late January or early February of 2010. (DE 25 ¶7; Tr. p. 44) Wexler returned from Florida to Illinois on January 23, 2010 and was present in Illinois until February 10, 2010 when he traveled to Los Angeles to visit his son after which he returned to

2

Illinois. (Tr. 46-51; Ex. 7)

A former employee and attorney at Friedman & Wexler, Jeremy Weddle ("Weddle"), testified that during the months of January, February and March of 2010, unless he was out of town on vacation, Wexler would generally be in the Friedman & Wexler offices in Chicago from Monday through Thursday. (Ex. 2, pp. 4-7) Although Weddle had lunch on a regular basis with Wexler during this period, Wexler never mentioned to Weddle that he had moved to Florida. (*Id.*) During the month of April, 2010, HSBC sued Friedman & Wexler. On April 20, 2010, Weddle and Adam Roberts ("Roberts"), a fellow attorney at Friedman & Wexler who was also Wexler's nephew, met with Wexler and his son, Mitchell Wexler, and advised that Weddle and Roberts were leaving the Friedman & Wexler firm and starting their own firm. Wexler authorized them to contact clients of Friedman & Wexler. (Ex. 2, pp. 7-9)

Roberts confirmed Weddle's testimony. He testified that unless Wexler and his wife were on one of the frequent vacations that they took, they would be in the Friedman & Wexler offices Monday through Thursday and would take Fridays off during the period up to April 20th. (Ex. 1, pp. 5-8) He stated that he probably saw Wexler a hundred times in 2010, mostly between January and April. (Ex. 1, p. 23)

Both Weddle and Roberts testified that they started operating their own law firm as of April 20, 2010 which operated from the Friedman & Wexler offices. (Ex. 1, pp. 10; Ex. 2, pp. 9) During the period from April 20, 2010 until June 19, 2010, Roberts and Weddle would try to avoid coming to the Friedman & Wexler offices if Wexler or his son, Mitchell Wexler were present. (Ex. 1, p. 11: Ex. 2, 9-10) Nevertheless, Roberts saw Wexler at the Friedman & Wexler offices approximately 3-4 times. (Ex. 1, p. 11) In addition, Wexler's wife would come to the Friedman & Wexler offices about 2-3 days per week during this period. (*Id.*)

Caesar Carrion ("Carrion"), the IT manager for Friedman & Wexler, testified that the last

3

group of Friedman & Wexler employees was terminated as of April 30, 2010. At that time he went to work for Roberts & Weddle which operated from the Friedman & Wexler offices until June 19, 2010. He saw Wexler in the offices a few times during this period. (Ex. 3, pp. 6-8) On June 17, 2010, Carrion sent Wexler and his son Mitchell Wexler an email complaining of the mismanagement of the firm and how the employees were being harmed and accused Wexler of leaving for Florida without saying good-bye. Wexler sent a return email in which he denied that he was leaving for Florida without speaking to employees and in which he advised Carrion that he would be in the Friedman & Wexler offices the following week if Carrion wanted to speak with him. (Ex. 3, State's exhibit 1)

Wexler testified at his deposition that he left Chicago at the end of March and went to Florida where he stayed until the first or second week of May. (Ex. 6, pp. 21-22) But during the hearing, he changed his story. Although he still testified that he was in Chicago from the middle until the end of March, he testified that during the month of April, he was in Chicago for two and maybe three weeks and in Florida for the rest of the time. (Tr. p. 56-57) He further testified that he was in Florida at the beginning of April and in Chicago at the end of April. (Tr. p. 57) Wexler's Chase/Amazon.com credit card statements (Ex. 9), however, show that he was in Illinois on April 2. (*Id.*) Based on this evidence, the testimony of Roberts and Weddle, and the lack of any independent evidence in the form of credit card receipts, airline tickets or other documentary evidence offered by Wexler to show otherwise, the Court finds that Wexler was in Illinois during the entire month of April 2010.

At the hearing, credit card records were introduced showing that Wexler was in Illinois from the beginning of May until May 30. Wexler acknowledged that he was in Illinois during the month of May until he left for Florida on May 30th.

With respect to the month of June, as noted above, Wexler testified at his deposition that he

was in Florida for the entire month of June. At the hearing he acknowledged, when confronted with the credit card records, that he returned to Illinois by June 11th. He further testified that he remained in Illinois until the end of June but then modified his testimony to state that he was in Florida for a few days in the third week of June. (Tr. pp. 63-64)

The testimony of Roberts, Weddle and Carillon, however, shows that Wexler was in the Friedman & Wexler offices on or around June 16, 2010. (Ex. 1, p. 13; Ex. 2, p. 10; Ex. 3, p. 10) In addition, as noted above, after Carillon sent Wexler and his son Mitchell Wexler an email complaining of the mismanagement of the and accusing Wexler of leaving for Florida without saying good-bye, Wexler sent a return email in which he denied that he was leaving for Florida without speaking to employees and in which he advised Carrion that he would be in the Friedman & Wexler offices the following week if Carrion wanted to speak with him. (Ex. 3, State's exhibit 1) The following week was the week of June 20. The credit card records show that Wexler made purchases in Illinois on June 21, June 22, and June 28 and that his wife made purchases in Illinois on June 27 and June 29. (Ex. 8, 30) Based on this evidence, the Court finds that with the exception of the period from June 1 through 11, Wexler was in Illinois during the month of June.

With respect to the month of July, 2010, Wexler, at his deposition, testified that he and his wife returned to Illinois from Florida at the end of June, then visited their son in Kokomo, Indiana for approximately a week over the 4th of July and returned directly to Florida on July 5, 2010. He further testified that they did not return to Illinois until the second week of August. (Ex. 6, pp. 23-24) At the hearing, Wexler likewise testified that he and his wife left from Chicago to visit their son in Indiana over the 4th of July and then continued on to Florida. (Tr. pp. 63-64)

The credit card records show that Wexler went from Illinois to Kokomo, Indiana on or about July 2 and returned to Illinois on or before July 10. (Ex. 8) They also show purchases by Wexler or his wife on July 25, July 27, and July 31. (*Id.*) Examining this evidence in the light most favorable

5

to Wexler, the Court finds that Wexler could not have been in Florida for more than two weeks during the month of July.

For the month of August, Wexler testified at the hearing that he was in Illinois until August 18 when he returned to Florida. (Tr. p. 67) This testimony is consistent with the credit card records that show he was in Illinois during the last week of July and that he likewise made at least one purchase in Illinois on August 5 and with the documentation showing that the closing on Wexler's residence took place on August 17. (Ex. 8, 12) Based on this evidence, the Court finds that Wexler was in Illinois from the beginning of August until August 18.

Wexler stayed at his home in Highland Park whenever he was in Illinois. (Tr. p. 51) Wexler and his wife had an estate sale conducted shortly before the home was sold to dispose of the personal property in the home. Those items that did not sell were given to Wexler's children or shipped to Florida. (Ex. 6, p. 33) The sale of the home took place on August 17, 2010. The sale price was $1,150,000. (Ex. 12) For purposes of real estate taxes, Wexler claimed a homestead exemption. (Tr. 75)

All of Wexler's mail was sent to his home in Highland Park until the home was sold. (Tr. p. 70) It was only after the sale of the home on August 17 that he asked the U.S. Post Office to start forwarding his mail to the Florida address. (Tr. p. 71) On August 11, 2010, Wexler sent a letter to the Illinois Attorney Registration and Disciplinary Commission in which he listed the address at his Highland Park home as the return address. (Ex. 13)

Wexler held an Illinois driver's license until he obtained a Florida driver's license on August 27, 2010. (Tr. p. 74) Wexler is also registered as a real estate broker in Illinois. (Tr. p. 7)

Wexler was a registered voter in Illinois for at least 30 years. He only registered to vote in Florida in September or early October of 2010. (Ex. 6, pp. 30-31)

During the Venue Period, Wexler owned the home in Highland Park, Illinois, held an interest

in the law firms in Chicago which he listed as being worth $8 million in his MB Bank Personal Financial Statement (Ex. 5), and owned a Bentley, Ferrari, Ford Model A Truck and Cadillac, all of which were registered in Illinois. (Tr. p. 25, 73) Although he first testified that he owned no property in Florida, he admitted at the hearing that he did have an interest in the trust which held title to the Florida condominium. (Tr. p. 18)

Wexler was part of an investment group that invested in a medical building in Kokomo, Indiana. His investment was $285,000. In late 2009 or early 2010, the building was sold to the medical group that was a tenant in the building and Wexler received around $40,000 on his investment. (Tr. p. 24) The investment group was located in Illinois and Indiana which is where their records are located. (Tr. p. 23) Wexler's records of the receipt and expenditure of the money consist of his bank account records at the Northern Trust Bank in Chicago. (Tr. p. 25)

Wexler held two life insurance policies with a face amount of $2 million. (Tr. p. 34) One policy was cancelled. The other policy had a cash value of $250,000. (Tr. p. 35) In late 2009, Mitchell Wexler, with Wexler's authorization, arranged to borrow against the cash value of the policy. (*Id.*) The funds obtained were loaned to Friedman & Wexler and $50,000 was loaned to Mitchell Wexler to purchase land next to his house. (Tr. p. 36)

Wexler never practiced law or any other profession in Florida. (Tr. p. 39-40) All of the law firms with which he was associated were located in Chicago. (Tr. pp. 8-9) Wexler's accountant who kept his personal books and records for the past seven years is located in Illinois. (DE 19, SOFA, Answer to Question 19) Wexler's books and records are stored at the home of his son, Mitchell Wexler, in Illinois. (*Id.*)

At the hearing, Wexler testified that it would cause a hardship, for both financial and health reasons, if his bankruptcy case was transferred to Chicago and he was forced to defend ISAC's adversary proceeding in the Bankruptcy Court there. (Tr. pp. 96-8) He admitted, however, that

7

since he filed for bankruptcy in September of 2010, he has returned to Illinois twice and stayed with his son. (Tr. p. 112) Roberts testified that on one of those occasions, Wexler and his wife returned to Illinois for their 50th high school reunion. (Ex. 1, p. 15)

## CONCLUSIONS OF LAW

1.   **Venue under 28 U.S.C. § 1408**

Under subsection (1) of 28 U.S.C. § 1408 which is the applicable provision for this case, venue is appropriate if the debtor's domicile, residence, principal place of business or principal assets are located in the district for a longer portion of the 180 day period prior to the filing of the bankruptcy petition than in any other district. If none of the four venue criteria are met, the Court, on motion of an interested party, must either transfer venue of the case to a district where venue is proper or dismiss the case. 28 U.S.C. § 1406(a); *see U.S. Trustee v. Swinney (In re Swinney*, 300 B.R. 388 (Bankr. M.D. Ga. 2003) (granting the U.S. Trustee's motion to transfer venue).

A.   **Domicile and Residence**

"Domicile" and "residence" are similar but not synonymous concepts. "Domicile" is defined as residence in fact coupled with the intent to remain there or to return when absent. *See In re Frame*, 120 B.R. 718, 722-23 (Bankr. S.D.N.Y. 1990). While a person can have multiple residences, he/she can only have one domicile. A domicile, once established, continues until a new one is established. *Id.* In making a factual determination of a debtor's domicile, the court is to consider evidence of the debtor's intent and the overt acts manifesting that intent. *Wilson v. Davis (In re Wilson)*, 62 B.R. 43, 44 (E.D. Tenn. 1985).

"Residence" is less inclusive than "domicile" and imports having an abode at a particular place. "Although a person may have multiple residences simultaneously, only one of these residences can qualify for the purpose of establishing venue under 28 U.S.C. § 1408(1) because of the 'longer than' requirement." *In re Frame*, 120 B.R. at 724. When more than one residence is

Case 11-09227    Doc 1    Filed 03/07/11    Entered 03/07/11 11:09:14    Desc Main
            Document      Page 9 of 11
   Case 10-36883-RBR    Doc 64    Filed 02/11/11    Page 9 of 11

claimed, the factual question is where the debtor spent the longer time during the venue period. *Id.*

In this case, the Court finds that Wexler's domicile during the Venue Period was his Highland Park home until he sold the home on August 17, 2010 and moved to Florida. While Wexler claimed that he moved to Florida in late January or early February of 2010 with the intent of permanently living there, the evidence shows that he was in Illinois and California at the very time he claimed to have made the move.

In addition, Wexler's overt acts do not support a finding that he permanently moved to Florida before August 17, 2010. Roberts, Wexler's nephew and an attorney at Freidman & Wexler, and Weddle, another attorney at Friedman & Wexler, testified that up until April 20, 2010, if he was not on vacation, Wexler would come to the Friedman & Wexler offices from Monday through Thursday. From April 20 until June 19, 2010, he would come in less often but his wife, Vicki Wexler, continued to come into the Friedman & Wexler offices 2-3 days per week. And Weddle testified that although he had lunch with Wexler on a regular basis, Wexler never mentioned that he had already permanently moved to Florida.

Wexler spent the vast majority of time during the Venue Period in Illinois. Wexler also maintained his law license and real estate broker's license in Illinois. All cars that he owned during the venue Period were registered in Illinois, Wexler held an Illinois driver's license until he obtained a Florida driver's license on August 27, 2010. Wexler was registered to vote in Illinois during the Venue Period. He only registered to vote in Florida in September or early October of 2010. Wexler's home in Illinois was furnished and he would stay in it whenever he was in Illinois. It was only a few days before the closing on the home took place that Wexler had an estate sale conducted. After the estate sale, Wexler gave some of his personal property to his children and shipped the rest to Florida. Wexler continued to have his mail delivered to his Illinois home up until the home was sold and used his Highland Park, Illinois address as his return address on the letter sent to the Illinois Attorney

Registration and Disciplinary Commission on August 11, 2010. Based on his overt acts, it is apparent that Wexler's Highland Park, Illinois home was his domicile until the time the home was sold on August 17, 2010.

Furthermore, Wexler's residence was in Illinois for most of the Venue Period. The only periods where the evidence shows that he was not in Illinois are (a) May 30 to June 11 when he went to Florida; (b) approximately 1 week over the 4th of July when he was in Kokomo, Indiana; (c) July 10 to 25 when he may have been out of Illinois but for which there is no documentary evidence; and (d) the period after August 17 when he sold his Illinois home and moved certain items of personal property to Florida until the Petition Date. The Court therefore concludes that venue is not proper in this district under the "residency" test.

### 2. Principal place of business and location of principal assets

By his own admission, Wexler never practiced law, or any other profession, in Florida and therefore fails to meet this test for venue. Furthermore, although he may not have been practicing law during the portion of the Venue Period that he was in Illinois, Wexler was attending to the business of Friedman & Wexler during the time he was in Illinois. The Court therefore concludes that venue is not appropriate in this district under the "principal place of business" test.

Although Wexler initially claimed that he had no property in Florida, he did admit that he held an interest in the trust that holds title to the Florida condominium. The value of his interest in the condominium, however, was, at most, a small percentage of the value of his interest in his Highland Park home, the automobiles, the law firms and other personal property that he owned. The Court therefore concludes that venue is not appropriate in this district under the "location of principal assets" test.

## CONCLUSION

In conclusion, if venue is not appropriate under 28 U.S.C. § 1408, the Court must either

transfer venue of the case to a district where venue is proper, or dismiss. In this case, because venue is not proper in this district under 28 U.S.C. § 1408, the Court, pursuant to Rule 1014(a) of the Fed. R. Bankr. P., will transfer this case to the U.S. Bankruptcy Court for the Northern District of Illinois where venue is proper, as requested by ISAC.[2]

It is therefore

**ORDERED** that the Motion to Transfer Venue to the Northern District of Illinois [DE 17] is **GRANTED**. The Clerk is directed to transfer this case to the United States Bankruptcy Court for the Northern District of Illinois.

####

Copies to:
Reggie David Sanger, Esq., for Debtor

James D. Newbold, Esq., Assistant Attorney General State of Illinois
100 W. Randolph Street
Chicago, IL 60601
Fax No. (312) 814-3589

---

[2] The Court need not consider whether venue should be transferred under 28 U.S.C. § 1412 because of the Court's conclusion under 28 U.S.C. § 1408.

11